UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:                                                    Case No. 18-14622-EPK

THE TREATMENT CENTER OF THE                               Chapter 11
PALM BEACHES, LLC

       Debtor.
_____/

**DEBTOR'S EXPEDITED APPLICATION, PURSUANT TO SECTION 363(b)
OF THE BANKRUPTCY CODE, FOR AUTHORITY TO EMPLOY AND RETAIN
GLASSRATNER ADVISORY & CAPITAL GROUP, LLC, AS RESTRUCTURING
ADVISORS TO THE CREDITORS, AND TO PROVIDE A CHIEF RESTRUCTURING
OFFICER *NUNC PRO TUNC* TO May 24, 2018**
**[Expedited Hearing Requested]**

The Treatment Center of the Palm Beaches, LLC ("Debtor"), by and through its proposed undersigned counsel, pursuant to 11 U.S.C. § 363(b), files this *Debtor's Application, Pursuant to Section 363(b) of the Bankruptcy Code, for Authority to Employ and Retain GlassRatner Advisory & Capital Group, LLC, as Restructuring Advisors to the Debtor, and to Provide a Chief Restructuring Officer, Nunc Pro Tunc to May 24, 2018* (the "Application"). The Application seeks entry of an order authorizing the retention of GlassRatner Advisory & Capital Group, LLC ("GlassRatner") to provide a chief restructuring officer ("CRO") of the Debtor effective as of May 24, 2018. In support of the Application, the Debtor relies upon the *Declaration of Michael Thatcher in Support of Debtor's Application, Pursuant to Section 363(b) of the Bankruptcy Code, for Authority to Employ and Retain GlassRatner Advisory & Capital Group, LLC, as Restructuring Advisors to the Debtor, and to Provide a Chief Restructuring*

8540642-1

*Officer, Nunc Pro Tunc to May 24, 2018* (the "Declaration") attached hereto as **Exhibit "A"**, and respectfully represents as follows:

<u>**Jurisdiction and Venue**</u>

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are sections 105(a), 363(b), 503, 507(a)(8), 541, 1107(a) and 1108 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

<u>**Background**</u>

4.      On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.

5.      The Debtor is operating its business and managing its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      The Debtor is a Florida limited liability company which is based in Lake Worth, Florida and was formed in June 2008 to provide to provide alcohol and drug detoxification treatment, with 121 employees and close to 40 patients.

7.      For a detailed description of the Debtor, its assets, liabilities and operations, the Debtor respectfully refers the Court and parties in interest to the Case Management Summary [ECF No. 33].

**Qualifications**

8.      The Debtor has determined that obtaining the ongoing services of a CRO will substantially enhance its ability to (a) operate and meet its administrative obligations in this case, (b) maximize and preserve the aggregate value of its assets, and (c) make an assessment as to the obligations of the Debtor and recommendation as to whether maximize value through continuing to operate, liquidate, or through a sale.

9.      To assist the Debtor in achieving the goals of this Chapter 11 Case, the Debtor has chosen to utilize GlassRatner personnel as appropriate and has appointed Michael Thatcher ("Thatcher") of GlassRatner, to the position of CRO, subject to the Court granting this Application.  GlassRatner is a specialty financial advisory services firm that provides solutions to complex business problems and board level agenda items.  GlassRatner maintains offices in Atlanta, Georgia; Fort Lauderdale, Orlando, Tampa and West Palm Beach, Florida; Bakersfield, Irvine and Los Angeles, California; New York, New York; Dallas, Texas; and Phoenix, Arizona.

10.      GlassRatner brings together a unique combination of financial and operating insight gained from decades of collective experience working in crisis situations, along with practical transaction experience.

11.      GlassRatner has a national and international reputation in the area of real estate and real estate restructuring.  The firm has provided a wide range of restructuring related services related to real estate assets including; advising borrowers and lenders in complex multi-bank out of court restructuring assignments, being retained by debtors and creditors in bankruptcy, being appointed as CRO in real estate and healthcare cases, and operating and managing real estate assets as well as healthcare facilities.

12.    Thatcher has nearly 18 years of relevant experience that combines financing, restructuring (both in chapter 11 and out of court) and senior management.  He has served as Receiver, Chief Restructuring Officer, Financial Advisor and Liquidating Agent in a broad range of industries including serving as the financial advisor to the Debtors of a $300 million home-health and hospice care provider based in Long Island, NY as well as advisor to creditors of a $600 million diabetes supply company based in South Florida.  Thatcher's biography is attached as **Exhibit "B"**.

13.    Prior to joining GlassRatner, Thatcher worked as an interim CFO and turnaround and restructuring advisor for Advanced CFO Solutions, a Salt Lake City based interim management firm, and for nearly 10 years, Thatcher was a Senior Vice President with Mesirow Financial Consulting where he was involved with several high-profile Chapter 11 filings originating out of the Southern District of New York and the District of Delaware.

14.    Thatcher has nearly 18 years of experience advising distressed clients in a variety of roles, including interim CFO, financial advisor to debtors, secured lenders and unsecured creditor committees in a broad array of industries including healthcare, distribution, retail, manufacturing, professional services, automotive, commercial aviation, publishing, technology, agriculture and commodities.

15.    In addition, GlassRatner will provide the services of Alan Barbee, Teresa Licamara, and Jonathan Eargle, all of whom are well qualified.

16.    The Debtor has been advised by GlassRatner that it will endeavor to coordinate with the other professionals retained in this case to eliminate unnecessary duplication of work.

17.    The Debtor believes that GlassRatner is well qualified and able to advise it in a cost-effective, efficient and timely manner.  Therefore, the Debtor submits that the retention and employment of GlassRatner is in the best interests of its estate.

### Services to be Rendered

18.    As per the terms contained in the Engagement Letter, attached hereto as **Exhibit "C"**, at the request and direction of the Debtor, GlassRatner's role will specifically include working with the Debtor's managers and professionals with respect to the following:

- Provision of Thatcher to serve as the Chief Restructuring Officers ("CRO") of the Debtor, who will work with the Debtor's owners and its managers, employees, and professionals with respect to the following: (the "Restructuring Services"); as well as additional professionals, who may be regular associates, or independent contractors/strategic partners of GlassRatner (collectively, the "Additional Personnel"), as required, to assist the CRO in the execution of the specific duties set forth in the Engagement Letter.

    - Assisting in all aspects of the Debtor's business activities and operations, including budgeting, cash management and financial management;

    - Negotiating with respect to the relationship with the Debtor's lenders;

    - Negotiating with vendors and other creditors;

    - Reviewing the Debtor's daily operating activities;

    - Evaluating the Debtor's liquidity options, including, restructuring, refinancing and reorganizing;

    - Maximizing the value of the Debtor's assets via the advancing of a competitive, open sale of the Property;

    - Reviewing purchases and expenses; and

    - Acting as the Debtor's representative in court hearings, as appropriate.

19.    Michael Thatcher is unavailable to be in South Florida until the week of June 4, 2018.  During that interim time, the Debtor proposes that Michael Thatcher oversee the efforts of GlassRatner and the Debtors remotely until he returns on June 4, and after will begin working

onsite with the Debtor.   The members of theGlassRatner team that will be working onsite while Michael Thatcher is out of town are Teresa Licamara, Jonathan Eargle, and Alan Barbee, who will be providing financial advisory services and evaluations of the budgets and projections of the Debtor, including an evaluation of the feasibility of restructuring the Debtor.   In addition, Lee Katz is available for consultation and oversight as needed.

20.     The Debtor has been advised by GlassRatner that it will endeavor to coordinate with the other professionals retained in this case to eliminate unnecessary duplication of work.

21.     Accordingly, the Debtor seeks to retain both Mr. Thatcher as CRO and GlassRatner as Financial Advisors.  Notwithstanding the appointment of the Chief Restructuring Officer, there will be no duplication of efforts between Thatcher and GlassmRatner.

### Terms of Retention and Compensation

22.     The terms of GlassRatner's proposed compensation are set forth in the Engagement Letter.  The Debtor requests that GlassRatner be compensated as follows for its services during the course of this chapter 11 case:

- GlassRatner will be paid hourly by the Debtor for its services as follows: (i) Michael Thatcher to serve as the CRO at $395 per hour; (ii) Alan Barbee at $450 per hour; (iii) Teresa Licamara at $350 per hour; (iv) Jonathan Eargle at $250 per hour; and (vii) other staff as appropriate at $195 to $450 per hour at their respective standard rates.

- GlassRatner requires a $40,000 retainer and further requires that the Debtor and DIP Lender agree that $50,000 for the first month and $40,000 thereafter will be included as an approved expense in all budgets submitted to the Court for DIP financing.

- Such compensation shall be subject to a monthly maximum on fees billed to GlassRatner (the "Monthly Cap") each month.  Any fees incurred by GlassRatner during a specific month that exceed the applicable Monthly Cap (the "Unbilled Fees") shall be treated as follows: (i) 50% of the Unbilled Fees shall be carried over and billed in the month immediately

following, and (ii) 50% of the Unbilled Fees shall be permanently written off by GlassRatner.

• The applicable Monthly Cap for each month shall be as follows: (i) Month 1 - $50,000; and (ii) Months Following Month 1 - $40,000..  In addition, GlassRatner will be reimbursed by the Debtor for the reasonable out-of-pocket expenses of the Co-CROs.

23.    Because the Debtor seeks to retain GlassRatner pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtor requests that GlassRatner not be required to submit regular applications to this Court approving its compensation. The Debtor submits that GlassRatner's proposed compensation structure, as described in the Engagement Letter, should be approved.

24.    Other than as set forth herein, no arrangement is proposed between the Debtor and GlassRatner for compensation to be paid in this chapter 11 case.  In light of the above, the Debtor submits that such proposed compensation is fair and reasonable and should be approved pursuant to the Bankruptcy Code.

**Indemnification**

25.    Subject to Court approval (including in accordance with the proposed order) and pursuant to the terms of the Engagement Letter, in connection with GlassRatner's engagement with the Debtor, the Debtor has agreed to provide indemnification and contribution to GlassRatner and its affiliates pursuant to terms substantially similar to the following:

The Debtor shall indemnify GlassRatner and the CRO to the same extent as the most favorable indemnification it extends to its Officers or Directors, whether under the Debtor's bylaws, its certificate of incorporation, or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to GlassRatner and the CRO.

The CRO shall be covered as an officer under the Company's existing director and officer liability insurance policies if such policy is in effect and the Debtor shall also maintain any such insurance coverage for the CRO for a period of not less than one year following the date of the termination of such officer's services

hereunder.   The indemnity provisions attached to the Engagement Letter are incorporated herein and the termination of this agreement or the engagement shall not affect those provisions, which shall survive termination.

26.     The Engagement Letter shall (together with the attached indemnity provisions) be: (a) governed and construed in accordance with the laws of Florida, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporated the entire understanding of the parties with respect to the subject matter thereof; and (c) may not be amended or modified except in writing executed by each of the signatories thereto.

27.     The terms of the Engagement Letter, both financial terms and the indemnification of GlassRatner by the Debtor, are similar to the terms agreed to by GlassRatner, both inside and outside of bankruptcy.   The terms and conditions of the Engagement Letter were negotiated between the Debtor and GlassRatner, and reflect the parties' mutual agreement as to the substantial efforts and protections of rights that will be required in this engagement.

## Applicable Authority

28.     Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue an order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 363(b) of the Bankruptcy Code provides in part that a debtor-in-possession "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b).  Under applicable case law, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved.  See, e.g., *In re Gulf States, Steel, Inc.*, 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*,

933 F.2d 513, 515 (7th Cir. 1983); *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to debtor's conduct").

29.     The retention of interim corporate officers and other temporary employees is proper under section 363 of the Bankruptcy Code.  Courts in Florida have authorized retention of temporary employees to provide restructuring services and interim management services under 363 of the Bankruptcy Code.  See *In re Adinath Corp., et al.*, Case No. 15-16885-BKC-LMI (Bankr. S.D. Fla. May 8, 2015); *In re Ruden McClosky P.A.*, Case No. 11-40603-BKC-RBR (Bankr. S.D. Fla. December 5, 2011); *In re Old Corkscrew Plantation, LLC, et al.*, Case No. 9:11-bk-14559-BSS (Bankr. M.D. Fla. August 25, 2011); *In re Robb & Stucky Limited LLLP*, Case No. 8:11-bk-02801-CED (Bankr. M.D. Fla. March 25, 2011); *In re Medical Staffing Network Holdings, Inc., et al.*, Case No. 10-29101-BKC-EPK (Bankr. S.D. Fla. July 22, 2010; *In re Taylor, Bean & Whitaker Mortgage Corp.*, Case No. 3:09-bk-07047-JAF (Bankr. M.D. Fla. November 12, 2009); *In re Puig, Inc., et al.*, Case No. 07-14026-BKC-RAM, (Bankr. S.D. Fla. June 20, 2007); *In re AT&T Latin America Corp., et al.*, Case No. 03-13538-BKC-RAM, (Bankr. S.D. Fla. June 11, 2003); *In re Piccadilly Cafeterias*, Case No. 03-27976-BKC-RBR, (Bankr. S.D. Fla. Oct. 31, 2003).

30.     The Debtor requests that the retention of GlassRatner be approved *nunc pro tunc* to the Petition Date.

31.     Because GlassRatner's work is ongoing and essential to the Debtor's reorganization, the Debtor requests that the Court consider this Application on an expedited basis.   While this application is not made under Rule 2014 and, thus, Rule 6003 is inapplicable, the Debtor proposes the entry of an interim order on an expedited basis subject to entry of a final hearing upon 21 days' notice.

**WHEREFORE,** the Debtor respectfully requests the entry of an Order, in the form attached hereto as **Exhibit "D"** (a) granting this Application; (b) approving, pursuant to section 105(a) and 363(b) of the Bankruptcy Code, (i) the retention and employment by the Debtor of Mr. Thatcher as CRO and GlassRatner as financial advisor pursuant to the terms of the Engagement Letter, *nunc pro tunc* to May 24, 2018; and (ii) the terms of the Engagement Letter, including the proposed fee structure and indemnification provisions as set forth in the Engagement Letter; and (c) granting such other and further relief as the Court deems appropriate.

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served electronically through the Court's CM/ECF system upon all parties registered to receive electronic notice in this case as indicated on the attached Electronic Mail Notice List on this 25th day of May, 2018.

> Respectfully submitted,
> FURR AND COHEN, P.A.
> Attorneys for Debtor
> 2255 Glades Road, Suite 337W
> Boca Raton, FL 33431
> Telephone: (561) 395-0500
> Facsimile: (561)338-7532-fax
>
> By:  _/s/Alvin S. Goldstein_____
>       Alvin S. Goldstein
>       Florida Bar No. 993621
>       agoldstein@furrcohen.com

**<u>EXHIBIT A</u>**
**(Thatcher Declaration)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:                                                    Case No. 18-14622-EPK

THE TREATMENT CENTER OF THE                               Chapter 11
PALM BEACHES, LLC

                    Debtor.
_____/

**DECLARATION OF MICHAEL THATCHER IN SUPPORT OF THE DEBTOR'S
APPLICATION, PURSUANT TO SECTION 363(b) OF THE BANKRUPTCY CODE,
FOR AUTHORITY TO EMPLOY AND RETAIN GLASSRATNER ADVISORY &
CAPITAL GROUP, LLC, AS RESTRUCTURING ADVISORS TO THE DEBTOR, AND
TO PROVIDE A CHIEF RESTRUCTURING OFFICER *NUNC PRO TUNC* TO
PETITION DATE**

        MICHAEL THATCHER, of GlassRatner Advisory & Capital Group, LLC

("GlassRatner"), makes this Declaration pursuant to 28 U.S.C. § 1746, and states:

        1.      I am a Senior Managing Director of GlassRatner.  GlassRatner is a professional

services firm engaged in the business of providing financial advisory and distressed asset

management services, with offices located in Atlanta, Georgia; Fort Lauderdale, Orlando, Tampa

and West Palm Beach, Florida; Bakersfield, Irvine and Los Angeles, California; New York, New

York; Dallas, Texas; and Phoenix, Arizona.

        2.      I submit this Declaration in support of the *Debtor's Application, Pursuant to Section

363(b) of the Bankruptcy Code, for Authority to Employ and Retain GlassRatner Advisory &

Capital Group, LLC, as Restructuring Advisors to the Debtor, and to Provide Michael Thatcher

as Chief Restructuring Officer Nunc Pro Tunc to the Petition Date* (the "Application").[1]  Except as

---

[1] All terms not otherwise defined herein have the meanings ascribed to them in the Application.

otherwise noted, I have personal knowledge of the matters set forth herein and, if called as a witness, I would testify competently thereto.[2]

3.      To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, other than my status as Chief Restructuring Officer ("CRO") of the Debtor, neither I, nor GlassRatner, nor any of its partners, principals, employees, agents or affiliates, have any connection with the Debtor, its creditors, the United States Trustee, or any other party with an actual or potential interest in this chapter 11 case, or their respective attorneys or accountants, except as set forth below:

(a)      In the future, GlassRatner may provide services to certain creditors of the Debtor and various other parties adverse to the Debtor in matters wholly unrelated to this chapter 11 case. As described below, however, GlassRatner has undertaken a detailed search to determine, and to disclose, whether it is providing or has provided, services to any significant creditor, equity security holder, insider or other party-in-interest in such unrelated matters.

(b)      GlassRatner provides services in connection with numerous cases, proceedings and transactions unrelated to this chapter 11 case. Those unrelated matters involve numerous attorneys, financial advisors and creditors, some of which may be claimants or parties with actual or potential interests in this chapter 11 case, or may represent such parties.

(c)      GlassRatner's personnel may have business associations with certain creditors of the Debtor unrelated to this chapter 11 case.  In addition, in the ordinary course of its business, GlassRatner may engage other professionals in unrelated matters who now represent, or who may in the future represent, creditors or other interested parties in this chapter 11 case.

---

[2] Certain of the disclosures contained herein relate to matters within the knowledge of other professionals at GlassRatner, and are based on information provided to me by them.

8541656-1

4.      In connection with the preparation of this Declaration, GlassRatner searched its client database and conducted a review of its professional contacts with the Debtor and other parties in interest that were reasonably known to us to determine whether GlassRatner had any relationships with the following types of entities:

(a)      the Debtor;

(b)      the Debtor's managers and members and certain of its most significant business affiliations;

(c)      secured lenders;

(d)      litigation parties, utility vendors, taxing authorities; and

(e)      unsecured creditors of the Debtor, among others, based upon information and/or documentation provided by the Debtor.

5.      Although the Debtor does not propose to retain GlassRatner under Bankruptcy Code § 327, to the best of my knowledge, information and belief, and other than as set forth herein, neither I nor GlassRatner hold or represent an interest adverse to the Debtor's estate and GlassRatner and I are each a "disinterested person," as that term is defined in Bankruptcy Code §§ 101(14) and 1107(b) with respect to the matters for which we are to be retained.  To the best of my knowledge, information and belief, and other than set forth herein, neither I nor the professionals at GlassRatner have any connection with the Debtor or its affiliates, its creditors, its estate, any United States District Judge or United States Bankruptcy Judge for the Southern District of Florida, the United States Trustee or any person employed in the office of the United States Trustee for Region 21, or any other party in interest, or their respective attorneys and accountants.

6.      Further, as part of its diverse practice, GlassRatner appears in numerous cases, proceedings and transactions that involve many different professionals, including attorneys,

8541656-1

accountants and financial consultants, who may represent claimants and parties-in-interest in this chapter 11 case.  As a result, GlassRatner may have represented and may in the future represent certain interested parties in matters wholly unrelated to this chapter 11 case, either individually or as part of representation of a committee of creditors or interest holders. Based upon GlassRatner's current knowledge of the professionals involved, and to the best of my knowledge, none of those relationships create interests materially adverse to the Debtor in matters upon which GlassRatner is to be employed, and none are in connection with this case.

7.    Despite the efforts described above to identify and disclose GlassRatner's connections with parties in interest in this chapter 11 case, because the Debtor is an enterprise with numerous creditors and other relationships, GlassRatner is unable to state with certainty that every client relationship or other connection has been disclosed.  In that regard, if GlassRatner discovers additional information that requires disclosure, GlassRatner will file a supplemental disclosure with the Court.

8.    GlassRatner is not a "creditor" of the Debtor within the meaning of Bankruptcy Code section 101(10).  Further, neither I nor any other GlassRatner partner or principal is a holder of any shares of any of the Debtor's stock.

9.    As of the date hereof, no commitments have been made or received by me and/or GlassRatner nor any partner or employee associate thereof, as to compensation or payment in connection with this case other than in accordance with the provisions of the Bankruptcy Code. Neither I, nor GlassRatner, have any agreement with any other entity to share with such entity any compensation received by GlassRatner in connection with this chapter 11 case.

10.    I, along with GlassRatner, reserve the right to supplement this Declaration in the event that I and/or GlassRatner discover any facts bearing on matters described in this Declaration

4

regarding GlassRatner's employment by the Debtor.

11.    This concludes my declaration.

### 28 U.S.C § 1746 Declaration

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 24, 2018.


/s/ *Michael Thatcher*
Michael Thatcher

5

**<u>EXHIBIT B</u>**
**(Thatcher's Biography)**

Biography:

# MICHAEL THATCHER - CIRA
## SENIOR MANAGING DIRECTOR





vCard

Michael Thatcher joined GlassRatner in 2016 to help found the Salt Lake City office. Prior to joining GlassRatner, Michael worked as an interim CFO and turnaround and restructuring advisor for Advanced CFO Solutions, a Salt Lake City based interim management firm. For nearly 10 years, Mr. Thatcher was a Senior Vice President with Mesirow Financial Consulting where he was involved with several high-profile Chapter 11 filings originating out of the Southern District of New York and the District of Delaware.

Michael has nearly 17 years of experience advising distressed clients in a variety of roles, including interim CFO, financial advisor to debtors, secured lenders and unsecured creditor committees in a broad array of industries including healthcare, distribution, retail, manufacturing, professional services, automotive, commercial aviation, publishing, technology, agriculture and commodities.

His healthcare-related involvements include serving as the financial advisor to the Debtors of a $300 million home-health and hospice care provider based in Long Island, NY as well as advisor to creditors of a $600 million diabetes supply company based in South Florida.

Some of Michael's notable roles include:
- Interim CFO and restructuring advisor to a $150 million agriculture operation in default with their lending syndicate. Assisted the client in the preparation of a 90-day rolling cash flow budget that was integrated with a borrowing-base line of credit. Reviewed all cash receipts and disbursements and provided authorization for outflows relative to weekly cash meetings with management and lenders. Negotiated with prospective sources of alternative liquidity, including banks and vendors.
- Advisor to lending syndicates in several capacities by analyzing collateral, working capital and business cash cycles utilized as consideration for a debtor-in-possession financing, a refinance or recapitalization. Financings ranged in size from approximately $50 million to over $1 billion.

Mr. Thatcher has a Bachelor of Science degree from Brigham Young University and a Masters of Business Administration from Boston University. He is a member of the Association of Insolvency and Restructuring Advisors ("AIRA") and is a Certified Insolvency and Restructuring Advisor ("CIRA"). Michael is currently serves on the board of directors for the Dallas-Ft. Worth and Salt Lake City chapters of the Turnaround Management Association ("TMA") and is affiliated with the Risk Management Association of Salt Lake City.

©2017 GlassRatner LLC. All rights reserved. www.GlassRatner.com

# EXHIBIT C
## (Engagement Letter)



## CHIEF RESTRUCTURING OFFICER AND FINANCIAL ADVISOR ENGAGEMENT LETTER AGREEMENT

May 22, 2018

<u>Via Electronic Mail Delivery</u>

Robert Furr, Esq., Debtors counsel
The Treatment Center of the Palm Beaches
4905 Lantana Road
Lake Worth, FL 33463

**RE:**    **Engagement of GlassRatner Advisory & Capital Group, LLC as the Chief Restructuring Officer and Financial Advisor to The Treatment Center of the Palm Beaches (collectively, the "Company" or the "Debtor")**

Dear Mr. Furr,

This Engagement Letter Agreement confirms our understanding that the above-referenced Debtors are engaging GlassRatner Advisory & Capital Group, LLC as Chief Restructuring Officer ("CRO") and Financial Advisors in the Debtors' Chapter 11 case ("the "Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of Florida, West Palm Division (the "Bankruptcy Court") and sets forth the terms and conditions of the engagement including the scope of services to be performed and the basis of compensation for those services.  Upon execution of this letter by each of the parties below, and approval of this Agreement by the Bankruptcy Court, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure, this letter will constitute an agreement (the "Agreement") between the Debtor and GlassRatner.

    1.    <u>Description of Services</u>

        a.    <u>Officers</u>.  In connection with this engagement, GlassRatner shall make available to the Debtors Michael Thatcher to serve as the Chief Restructuring Officer of the Company (the "CRO").  In addition, GlassRatner shall provide the services of Alan Barbee, Teresa Licamara and Jonathan Eargle at their rates of $450, $350 and $250, respectively.

Other GlassRatner personnel will provide services at their standard hourly rates ranging from $450 to $195 at the direction of the CRO, but with the consent of the Company.

b.    Duties and Powers.

(i)     The CRO shall be an officer of the Company and shall have the duties similar to that of a Chief Executive Officer including, but not limited to: (a) assisting in all aspects of the Company's business activities and operations, including budgeting, cash management and financial management; (b) negotiations regarding the relationship with the Company's lenders, (c) negotiations with vendors, customers and other creditors (d) hiring and terminating of employees of the Company (see limitation in (ii)), (e) review of daily operating activity, (f) evaluating liquidity options including restructuring, refinancing and reorganizing; (g) reviewing purchases and expenses and (h) acting as the Company representative in court hearings as appropriate.

(ii)    The CRO understands that the Company has engaged the law firm of Furr & Cohen, PA as its counsel ("Counsel"), and that the powers of the CRO do not include the power to terminate Counsel. Only the Board can vote to terminate or replace Counsel to the Company.

(iii)   The CRO shall assist the Company in evaluating and executing restructuring alternatives.

(iv)    Analyze the Debtors' operations and financial position and provide recommendations with respect to financial restructuring or dispositions of assets, in conjunction with the Board of Directors and existing employees of the Debtors, as needed, as determined by the CRO;

(v)     On behalf of the Debtors, evaluate strategic alternatives to maximize the value of the Debtors' assets, enterprise or operations and, as necessary, to develop a plan of reorganization or liquidation, in conjunction with the Board of Directors and existing employees of the Debtors, as needed, as determined by the CRO;

(vi)    Serve as a principal contact for the Debtor with the Debtors' creditors with respect to the Debtors' financial and operational matters;

(vii)   Provide information and analyses for inclusion in Bankruptcy Court filings and testimony related thereto;

(viii)  Upon request and under the supervision of Debtors' Counsel, to support negotiations with the various creditor and other constituents in the Bankruptcy Case;

(ix)    Supervise GlassRatner's preparation of any and all monthly financial reports as required of a debtor-in-possession and other financial reporting required by the Office of the United States Trustee on behalf of the Debtors;

(x)     Coordinate all activities on behalf of the Debtors in connection with any refinancing, capital raising and sale process for the Debtors, in conjunction with the Board of Directors and existing employees of the Debtors, as needed, as determined by the CRO.

c.      <u>Reporting</u>.  The CRO shall report to the Board of the Company provided, however, that the CRO shall not require the consent or approval of the Board to take action (or elect not to take action) in such officer's capacity as CRO; provided further, however, the CRO shall routinely consult and provide the Board with the status of actions which have been initiated and/or actions which are being planned but not yet initiated.

d.      <u>Employment by GlassRatner.</u>  The CRO will continue to be employed by GlassRatner and while rendering services to the Company continue to work with other personnel at GlassRatner in connection with other unrelated matters, which will not unduly interfere with services pursuant to this engagement.  With respect to the Company, however, the CRO shall operate pursuant to the terms of this Agreement.

e.      <u>Projections; Reliance; Limitation of Duties</u>.  You understand that the services to be rendered by the CRO may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections and other forward-looking statements.  In addition, the CRO will be relying on information provided by other members of the Company's management in the preparation of those projections and other forward-looking statements. Neither the CRO nor GlassRatner makes any representation or guarantee that the business will achieve or not achieve a particular result. Further, that any restructuring plan formulated for the Company, or selected by the CRO, will be more successful than all other possible restructuring alternatives or that any proposed restructuring alternative will be accepted by any of the Company's creditors and other constituents.

2.   <u>Compensation</u>

a.      GlassRatner will be paid by the Company for the services of the CRO at $395 per hour for the services of Michael Thatcher.  Other GlassRatner staff used will have rates that range from $195 per hour to $450 per hour.

b.      Such compensation shall be subject to a monthly maximum on fees billed to the Company (the "Monthly Cap") each month.  Any fees incurred by GlassRatner during a specific month that exceed the applicable Monthly Cap (the "Unbilled Fees") shall be treated as follows:

i.   50% of the Unbilled Fees shall be carried over and billed in the month immediately following, and

        ii.  50% of the Unbilled Fees shall be permanently written off by GlassRatner.

c.      The applicable Monthly Cap will be $50,000 in month one and $40,000 thereafter.

d.      The Company and GlassRatner agree to use reasonable efforts to assess the Monthly Cap, periodically, after the engagement has commenced to determine if any adjustment to the Monthly Cap is warranted.

e.      In cases such as these, GlassRatner requires a retainer of $40,000. Further, the Debtor and the DIP Lender agree that $40,000 per month will be included as an approved expense in any budgets for post-petition financing and the use of cash collateral.

f.      In addition, GlassRatner will be reimbursed by the Company for the reasonable out-of-pocket expenses, including travel expenses of the CRO.

g.      With the application to the Bankruptcy Court seeking approval of the engagement of the CRO, the Debtors will request that the CRO not be required to apply for payment of each monthly installment.

h.      Further, if GlassRatner provides avoidable transfer analysis, evaluation of potential causes of action, litigation support consulting or forensic accounting, those services will be billed in addition to Monthly Cap.

3.      <u>Termination</u>

Subject to Bankruptcy Court approval, the engagement will commence effective with the execution of the Agreement and can be terminated by either party with 30 days written notice.  Any professional services provided during the period after notice but before the end of the term are the liability of the Company.

4.      <u>No Audit, Duty to Update</u>

It is understood that the CRO and GlassRatner are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.  They are entitled to rely on the accuracy and validity of the data disclosed to them or supplied to them by employees and representatives of the Company.  The CRO and GlassRatner are under no obligation to update data submitted to them or review any other areas.

5.      <u>No Third Party Beneficiary</u>.

The Company acknowledges that all advice (written or oral) given by GlassRatner to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to the shareholders of the Company and management) in considering the matters to which this engagement relates.  The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without

GlassRatner's prior approval (which shall not be unreasonably withheld), except as required by law.

6.    Conflicts.

GlassRatner is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware.   Because GlassRatner is a consulting firm that serves Companies on an international basis in numerous cases, both in and out of court, it is possible that GlassRatner may have rendered services to or have business associations with other entities or people which had or have or may have relationships with the Company, including creditors of the Company.

7.    Confidentiality / Non-Solicitation.

The CRO and GlassRatner shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

8.    Indemnification.

The Debtors shall indemnify GlassRatner and the CRO to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Company' bylaws, its certificate of incorporation, or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to GlassRatner and the CRO.  The CRO shall be covered as an officer under the Company's existing director and officer liability insurance policies if such policy is in effect and the Company shall also maintain any such insurance coverage for the CRO for a period of not less than two years following the date of the termination of such officer's services hereunder.   The attached indemnity provisions are incorporated herein and the termination of this agreement or the engagement shall not affect those provisions, which shall survive termination.   The provisions of this section 8 are in the nature of contractual obligations and no change in applicable law or the Company' charter, bylaws, or other organizational documents or policies shall affect the CRO's or GlassRatner's rights hereunder.

9.    Miscellaneous.

This Agreement shall (together with the attached indemnity provisions) be:  (a) governed and construed in accordance with the laws of the State of Florida, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporates the entire understanding of the parties with respect to the subject matter thereof; and (c) may not be amended or modified

except in writing executed by each of the signatories hereto.  The Debtors and GlassRatner agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the performance or non-performance of the Company or GlassRatner hereunder.

10.     <u>Conclusion</u>.

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.


Very truly yours,

**GLASSRATNER ADVISORY & CAPITAL GROUP, LLC**

By: _____

Name:  Alan R. Barbee, Principal


Accepted and Agreed:


_____

Authorized Member of Board of Directors


_____

Authorized Representative of the DIP Lender

## ADDITIONAL INDEMNITY PROVISION

The Treatment Center of the Palm Beaches, LLC (the "Company"), to the extent permissible under Florida State law,  agrees to indemnify and hold harmless each of GlassRatner Advisory & Capital, LLC ("GlassRatner"), GlassRatner's shareholders, officers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of GlassRatner, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted from such Indemnified Party's gross negligence or willful misconduct.  The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of GlassRatner, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted from such Indemnified Party's gross negligence or willful misconduct.  The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

**<u>EXHIBIT D</u>**
**(Proposed form of Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:                                              Case No. 18-14622-EPK

THE TREATMENT CENTER OF THE                         Chapter 11
PALM BEACHES, LLC

       Debtor.

_____/

**INTERIM ORDER APPROVING THE DEBTOR'S APPLICATION, PURSUANT TO SECTION 363(b) OF THE BANKRUPTCY CODE, FOR AUTHORITY TO EMPLOY AND RETAIN GLASSRATNER ADVISORY & CAPITAL GROUP, LLC, AS RESTRUCTURING ADVISORS TO THE CREDITORS, AND TO PROVIDE A CHIEF RESTRUCTURING OFFICER, *NUNC PRO TUNC* TO THE PETITION DATE**

**THIS MATTER** having come before the Court for an interim hearing on May 30, 2018 at

1:30 P.M. on the *Application, Pursuant to Section 363(b) of the Bankruptcy Code, for Authority to*

*Employ and Retain GlassRatner Advisory & Capital Group, LLC, as Restructuring Advisors to*

*the Debtor, and to Provide a Chief Restructuring Officer, Nunc Pro Tunc to the Petition Date* (the

"Application") [ECF No. ___ ] filed by the above-captioned debtor in possession (the "Debtor").

The Application seeks entry of an order authorizing the Debtor to retain GlassRatner Advisory &

Capital Group, LLC ("GlassRatner") to provide interim management and restructuring advisory services, including providing a Chief Restructuring Officer to the Debtor upon the terms and conditions set forth in the Engagement Letter attached as Exhibit B to the Application.[2]

The Court finds that upon the Application, the Thatcher Declaration attached as Exhibit A to the Application; and it appearing that neither GlassRatner nor Thatcher holds nor represents any interest adverse to the Debtor's estate; that consideration of the Application and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b); and that the Debtor asserts that this Court has jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, and that venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  It appearing that adequate notice of the Application under the exigent circumstances has been given and that no other and further notice is necessary for purposes of this Order; and the relief requested in the Application being in the best interests of the Debtor and its estate and creditors; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein on an interim basis; and upon all of the proceedings had before this Court and after due deliberation thereon; and good and sufficient cause appearing therefore, it is

**ORDERED** that:

1.      The Application is **APPROVED** on an interim basis.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Application.

2

8540663-1

2.      A final hearing on the Application is scheduled for **June____, 2018 at 1:30 P.M.** at the Flagler Waterview Building, 1515 N. Flagler Drive, Room 801, Courtroom B, West Palm Beach, Florida 33401.

3.      The Debtor is authorized, pursuant to 11 U.S.C. §§ 105(a) and 363(b), effective as of the Petition Date, to employ and retain Michael Thatcher as Chief Restructuring Officer and GlassRatner as financial advisors for the Debtor, upon the terms set forth in the Engagement Letter attached to the Application as Exhibit C, *nunc pro tunc* to the Petition Date.

4.      In the event the Debtor seeks to have GlassRatner materially change the terms of the engagement by either (i) modifying the functions of personnel, or (ii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed.

5.      The payment terms, referenced in the Engagement Letter attached to the Application as Exhibit A are **APPROVED**.

6.      The Debtor shall indemnify GlassRatner and the CRO (the "Indemnified Persons") to the same extent as the most favorable indemnification it extends to its officers, directors and managers, whether under the Debtor's bylaws, its certificate of incorporation, or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to the Indemnified Persons pursuant to the indemnification provisions of the Engagement Letter and, during the pendency of this Chapter 11 Case, subject to the following conditions:

        a.      All requests of Indemnified Persons for payment of indemnity, contribution or otherwise pursuant to the indemnification provisions of the Engagement Letter shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Court to ensure that such payment conforms to the terms of the Engagement

3

8540663-1

Letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and this order; provided, however, that in no event shall an Indemnified Person be indemnified or receive contribution to the extent that any claim or expense has resulted from the bad faith, self-dealing, breach of fiduciary duty, if any, gross negligence or willful misconduct on the part of that or any other Indemnified Person;

            b.      In no event shall an Indemnified Person be indemnified or receive contribution or other payment under the indemnification provisions of the Engagement Letter if the Debtor, its estates, or the statutory committee of unsecured creditors appointed in this chapter 11 case assert a claim, to the extent that the Court determines by final order that such claim arose out of bad faith, self-dealing, breach of fiduciary duty, if any, gross negligence, or willful misconduct on the part of that or any other Indemnified Person; and, for the avoidance of any doubt, to the extent of such a finding, the proviso set forth in the second sentence of the contribution provisions of the Engagement Letter shall not be applicable, such that GlassRatner's potential liability for such acts shall not be limited to the amounts received by GlassRatner for services rendered in this chapter 11 case;

            c.      In the event an Indemnified Person seeks reimbursement for attorneys' fees from the Debtors pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be submitted pursuant to interim and final fee applications, and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code.

8540663-1

7.    GlassRatner shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtor, its creditors, or other parties in interest.  The obligation to disclose as identified in this paragraph is a continuing obligation.

8.    Except as otherwise required by this Order, GlassRatner will not be subject to any order of this Court governing the procedures for interim compensation for professionals, and the Debtor is authorized to compensate GlassRatner in accordance with the terms of the Engagement Letter without further order of the Court.

9.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

10.    The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

# # #

Submitted by:
ALVIN S. GOLDSTEIN
agoldstein@furrcohen.com
FURR AND COHEN, P.A.
Attorneys for Debtor
2255 Glades Road, Suite 337W
Boca Raton, FL 33431
(561) 395-0500/(561)338-7532-fax

 *(Attorney Goldstein is directed to serve a conformed copy of this Order upon all interested parties, and to file a certificate of service with the Court).*

8540663-1